TIMOTHY H. SMITH *vs.* DANIEL H. BARNES.
SAME *vs.* DANIEL GREEN.
SAME *vs.* HENRY E. HOWE.

In an action of tort for trespass on the plaintiff's close, in which the defendants set up, as a defence, a right of way across the close, the evidence showed that they owned a right to cross the close by a way which the plaintiff obstructed and shut up against their will and notwithstanding their resistance; that he afterwards gave them notice that they might cross by a different way, which they thereupon adopted and used for several years with his acquiescence, the old way remaining obstructed; and that, before obstructing the old way, he sued his grantor and recovered damages for breach of a covenant of full warranty in his deed of the close, in that the close was incumbered by a right of way across it of certain persons named and others not described by name in the suit. *Held*, that this evidence warranted a finding that there was a dedication of the new way by the plaintiff, in consideration of the surrender of the old one; and that it was immaterial that the plaintiff, when he acquired the close, had no knowledge or suspicion that any one owned a right of way across it, and never in terms recognized or acknowledged such a right.

THREE ACTIONS OF TORT against proprietors of a marsh in North Chelsea, for trespassing on the plaintiff's adjoining upland; tried together in the superior court, without a jury, before *Ames*, C. J., who gave judgment for the defendants, and reported the cases for the revision of this court, in substance as follows:

In 1850, James Smith, by deed with covenants of full warranty, conveyed a farm abutting on a highway in North Chelsea to the plaintiff, who built a hotel on part of the land, inclosed another part for a racecourse, and graded a wide avenue from the highway to the gate of the inclosure. On the easterly side

of this farm lay a wide tract of marsh, subject to overflow by the tide, and owned by various proprietors, who for at least fifty years had been accustomed to cross the upland of the farm to the marsh for the purpose of cutting their salt grass, so that the judge found "that there was an ancient, established and well understood usage or custom for the owners of said marshland, with their servants, &c., to pass over the land belonging to the plaintiff, for that purpose;" and he further found, "as to each defendant, that at the date of the alleged trespass he was an owner of a portion of the marshlands, and that he, and those under whom he derived his title, had enjoyed and used, under a claim of right and adversely, a passage over the land belonging to the plaintiff, without opposition or obstruction, (except as hereinafter set forth,) for more than thirty years, to and from their several lots in the marsh, for the purpose of getting and removing the hay raised thereon, and for other purposes incident to the disposal or gathering of the crop, and during the whole of that time there was no other access to the marsh." The defendants did not claim a right of way by necessity; and it did not appear that either of them derived title to his marshland from any person under whom the plaintiff claimed.

"From the highway, at the point where there was a passage through the fence by taking down bars, there was a clearly defined track or carriageway, over which the proprietors of the marshes were accustomed to pass, leading towards the marsh. At a point about in the middle of the race park, the track was less clearly defined, the ground being soft, and occasionally overflowed by the tide; and at this point the travel diverged to the right and left, to pass through one or the other of the two gaps in a dike, in order to have access to different parts of the marsh, beyond the plaintiff's land. In 1856, the plaintiff removed the bars at the highway, and closed up the entrance to the way above described with a solid stone wall; placed one of his outbuildings, and the spectators' stand in the race park, on ground over which the way passed; and across the way erected a fence, with a gate in it, (which at times was fastened,) and laid a stone wall by the side of the way, partially encroaching upon

it. The marsh proprietors resisted these attempts of the plaintiff to obstruct the way; the wall at the entrance was several times thrown down by them, and rebuilt by the plaintiff; and it was proved that the plaintiff afterwards gave express permission to some of the proprietors to pass over the avenue and through the gate into the race park, and to go around within the inclosure, but keeping outside of the race track, to the gaps through the dike, and so to the marshes, and also requested them to give notice to the other proprietors that they might do so instead of going by the old way; and it was further proved that for several years, but not more than ten, the old way to the marsh had been disused, and the owners of the marshlands, with their servants, &c., had made use of the new or substituted way, which, though somewhat longer, was better and more convenient.

" It also appeared that the plaintiff did not in terms recognize or acknowledge any right of way in these defendants, or anybody else, over his premises; and he testified, and there was no evidence to the contrary, that, when he bought the farm, he had no knowledge or suspicion that any such right existed; but the defendants were permitted to show by the records of the court, that the plaintiff brought an action against his grantor for breach of the covenants of warranty and freedom from incumbrance, in the deed of the land to him, the alleged breach being that the granted premises were incumbered with a right of way in favor of certain persons named, and certain others not described by name, over the land, and recovered damages in that action in November 1855.

" In 1866, the plaintiff closed the gate upon the avenue, and refused to allow the defendants, or any of the owners of the marshlands, to pass over the new or substituted way; and the trespasses alleged in these actions consisted in an attempt by the defendants severally to force their way, and to go in at said gate and round within the inclosure, but outside of the race track, to the gaps in the dike, and so to the marsh, in order to cut and remove the grass, the old way being at the time obstructed in the manner above described; but, with the exception of the

stone wall at the entrance, there was no impassable or very troublesome obstruction in the old way, (there being room to pass round the outbuilding and the spectators' stand,) although after these actions were brought the plaintiff ploughed up a portion of it.

" The plaintiff contended that the permission given to any of said proprietors to cross the premises by entering at the gate of the racecourse was a mere revocable license ; and that upon the facts the defendants had no right, upon the revocation of such license, to enter upon the plaintiff's premises and cross the same (if they had any right of way over his land at all) except upon the line and limits of the old and customary way ; but the judge ruled otherwise, and that, on the facts and under the circumstances above reported, the plaintiff had no right of action against the defendants."

*G. A. Somerby & A. Wellington,* for the plaintiff.

*T. Weston, Jr., & W. P. Harding,* for the defendants, were not called upon.

Hoar, J. The facts reported in the bill of exceptions show that the defendants owned a right of way to their marshes over the plaintiff's land ; that the plaintiff obstructed and shut up the way, against the will and notwithstanding the resistance of the defendants ; that he afterward notified the defendants that they might pass over his land by a different way ; and that they thereupon adopted and used the new way instead of the old one for several years, the old one remaining obstructed. The action is tort in the nature of trespass *quare clausum fregit,* and the defendants justify under a claim of right in the new way.

We can have no doubt that these facts were ample to warrant the finding that there was a dedication of the new way in consideration of the surrender of the old one, under the authority of *Larned* v. *Larned,* 11 Met. 421 ; *Pope* v. *Devereux,* 5 Gray, 409 ; *Smith* v. *Lee,* 14 Gray, 473.

The fact that the plaintiff, when he bought his farm, had no knowledge or suspicion that any such right of way existed, and that he did not in terms recognize or acknowledge any right of way, does not affect the legal conclusion. He had full notice

that the defendants claimed a right of way, before the substitution was made, and his acts in closing up the one and notifying the defendants that they might use the other, accompanied by the acquiescence of both parties in the change, and in connection with his action against his grantor for the damages occasioned by the incumbrance, were as effectual proof of his acknowledgment of the right as any verbal statement.

*Exceptions overruled.*