## THOMPSON et al. v. MADSEN et al.

### No. 1635 (81 Pac. 160).

1. EASEMENTS—RIGHT OF WAY—PRESCRIPTIVE TITLE—SUBSTITUTION OF WAYS.—Where plaintiffs' predecessors in title consented to the closing of a certain right of way owned by them, in consideration of a grant by defendants' predecessors in title of another right of way, which plaintiffs and their predecessors accepted and used, defendants were not entitled to close the substituted right of way without first restoring the old one, even though the grant of the substituted right of way was oral.

2. SAME—USE OF SUBSTITUTED WAY.—Where the owner of a right of way acquired by prescription consents to the closing of it in consideration of the substitution of a new one, the right to use such new way at once attaches, and he is not required to use it for a period of time to give him title by prescription.

(Decided June 13, 1905.)

APPEAL from District Court, Salt Lake County; W. C. Hall, Judge.

Action by Ezra Thompson and others against P. W. Madsen and others. From a judgment for plaintiffs, defendants appeal.

AFFIRMED.

*Whittemore & Cherrington* for appellants.

*Sutherland, Van Cott & Allison* for respondents.

APPELLANT'S POINTS.

The testimony in this case tends to prove, if it tends to prove anything, that the alleyway in question is a public alley but this court has already decided that such is not the case and plaintiffs in the present case abandoned that contention in the court below, but we challenge plaintiffs and respondents to point out to this court any part of the testimony of any witness that tends in the slightest degree to show a continuous and adverse use of either the north and south alley or of the east and west alley by anyone of the plaintiffs or by a predecessor of any plaintiff, for such length of time as is necessary for the acquiring of a prescriptive right, excepting, however, the use and ownership of the plaintiff Utah Commercial & Savings Bank and its predecessors, whose right to the use of the east and west alley we do not now deny and never have denied. It was necessary for them to show the length of time that each plaintiff or his predecessor had used the north and south alley. The party claiming an easement must show affirmatively all of the elements that go to make up the prescriptive right, and if he leaves it doubtful whether anyone of the elements exist that is necessary to the acquiring of a prescriptive right, judgment should be against him. (*American Company v. Bradford,* 27 Cal. 361; *Strong v. Baldwin,* 137 Cal. 432; Washburn on Easements and Servitudes [4 Ed.], pages 150-151.)

It seems to us improper to take further of the court's time in considering this question of substitution since as we have shown the evidence does not show that the plaintiffs in this case had any rights in the north and south alley for which to demand something in substitution, or that any of them did demand anything, while it is equally clear from the evidence that the east and west alleyway was not granted to or for any class of persons to whom anyone of the plaintiffs, except the Utah Commercial & Savings Bank, ever belonged.

We now come to the consideration of the only other question in the case, that is, whether or not before the commencement of this action the plaintiffs had used the east and west alley

continuously, uninterruptedly, adversely and under a claim of right known to the defendants for the period of time requisite to give them a prescriptive right. To acquire a right of way by prescription the user must have been continuous, uninterrupted, adverse and hostile to the title of the servient estate and under a claim of right known to the owner of the servient estate. (*Thomas v. England,* 12 Pac. 491; *Richards v. Hupp,* 37 Pac. 920; *Harkness v. Woodmansee,* 7 Utah 227; *Funk v. Anderson,* 22 Utah 238; Washburn on Easements and Servitudes, *supra; American Company v. Bradford, supra; Strong v. Baldwin, supra.*)

### RESPONDENT'S POINTS.

The appellants made but one assignment of error, and this they had settled in their bill of exceptions in the trial court. The assignment was to the effect that there was no evidence tending to support the decree, and in particular that there was no evidence tending to show that the plaintiffs or their predecessors in interest ever used the alleyway in question so as to obtain an easement over the same. As the appellants made this assignment of error in the court below and had the same settled by the court, they have no right now to make any other assignment of error. The law is well settled that new questions cannot be raised in the appellate court.

In 15 Utah 280, *Hamilton et al. v. Dooly,* it is said in the syllabus that, "an objection, raised for the first time in this court, that the notice was defective will be regarded as waived." In 23 Utah 466, *Wasatch Irrigation Company v. Fulton,* is a discussion of the sufficiency of the specification, and on page 470, it is said: "When an exception is to the decision, on the ground of the insufficiency of the evidence to sustain it, the objection must specify the particulars in which such evidence is alleged to be insufficient."

This case should be affirmed, irrespective of the merits, because appellants have not brought up all the testimony to this court, and the presumption of law is conclusive in such case that if such evidence had been in the record, it would be suf-

ficient to justify an affirmance. (*Snyder v. Emerson,* 19 Utah 321; *Hecla Mining Co. v. Gibson,* 21 Utah 73; *Cochrane v. Busscher,* 7 Utah 233; 2 Ency, P. & P. 441.)

Aside from the question of authority, it would seem on principle that if the owners of an alleyway, after the same has become vested, or even if it is not vested, consent, for the convenience of the owner of the servient estate, to change the alleyway to another place, that the re-located alleyway would and should have all the rights, conditions and burdens of the old alleyway. It would be contrary to equity to allow the servient owner to obtain the change for his benefit and then allow him to claim that the old way had been abandoned and that a new way had not been obtained by prescription. Such a claim would, or should, shock one's conscience, and as a matter of principle the court should estop the owner from closing the new way without restoring the old one. (*Wright et al. v. Willis,* 63 S. W. 991; *Hamilton v. White,* 5 N. Y. 9; 23 Ency. Law [2 Ed.], 33; *Smith v. Barnes,* 101 Mass. 275; *Beinlein v. Johns,* 102 Ky. 570; *Robinson v. Thrailkill,* 110 Ind. 117; Washburn on Easements and Servitudes [4 Ed.], p. 176; *Cheney v. O'Brien,* 69 Cal. 199; *Talbott v. Thorn et al.,* 16 S. W. 88.)

The defendants claim in their brief that there was not an adverse user by the plaintiffs. The evidence, however, is so overwhelmingly to the contrary that we deem it entirely unnecessary to review the same in detail. The court found in addition that the use of the plaintiffs was adverse and there was no interruption. It also appears that there was an agreement among the owners to establish the alleyway and this agreement was fully executed. There is a presumption that when an alleyway is used openly and continuously during the prescriptive period that the use is adverse. (22 Ency. Law [2 Ed.], 1202.)

STRAUP, J.

1. This appeal involves the right of plaintiffs in and to the use of a certain alley or right of way. Findings and judgment were for plaintiffs, and defendants appeal. From the

findings, supported, as we think, by sufficient evidence, it is made to appear: That from 1858 to and including 1879 there was a private alleyway running north and south from Second South to First South streets, through the block between Main and Commercial streets, in the city of Salt Lake, particularly described in the findings. That in the years 1878 and 1879 the plaintiffs, their grantors and predecessors, were the owners of a right of way over said alleyway along its entire course. That in the year 1879 the grantors and predecessors of the defendants, who owned property adjoining said alleyway facing on First South street, closed up a portion of said alleyway a short distance south from First South street. Upon objections being made by the said plaintiffs, their grantors and predecessors, to the closing of the said alley, the grantors and predecessors of defendants then orally agreed with the said plaintiffs, their grantors and predecessors, that, in consideration of such closing, they (the said grantors and predecessors of the said defendants) would and did grant to the said plaintiffs, their grantors and predecessors, in lieu of said portion of the alley so closed a right of way over a portion of the land then owned by the grantors and predecessors of the defendants, running east from the point of said alley so closed to Commercial street; and, from thence on, plaintiffs, their grantors and predecessors, used said new or substituted alleyway in the same manner as they had theretofore used the alleyway running north and south, openly, uninterruptedly, continuously, notoriously, adversely, and under a claim of right, except in the year 1889, when there was a so-called interruption to the use of a portion of said alleyway running east and west owing to excavations being made by the defendants for a building, nevertheless they providing and leaving a right of way for the use and benefit of said plaintiffs, their predecessors and grantors, and except about the year 1893, when there was a so-called interruption on account of certain repairs made, owing to the neglect of the said defendants, but that such said interruptions were made in recognition of and subservient to the rights of plaintiffs, their grantors and predecessors. That in November,

1902, the defendants erected a gate or fence across the east and west alley, and ever since have maintained the same, and, unless prevented by the order of the court, will continue to maintain the said gate or fence, and thereby prevent plaintiffs from at all using the said east and west alley, especially for the purpose of going to and from their lands and buildings adjoining and situate along the said north and south alley. That the east side of Main street and the west side of Commercial street, from Second to First South streets, except the passageway of the said east and west alley, are wholly covered and occupied by buildings. That the plaintiffs own buildings fronting on said Main and Commercial streets, which are used for stores, and that their use of the said east and west alley is necessary for ingress and egress in and to the rear of the said buildings, and for the hauling and delivery of goods and wares by drays and teams, and for the conduct of their business and that of their tenants, and that they have no other accessible or convenient means. That said north and south alley is too narrow for teams ordinarily to turn, and that the said east and west alley is necessary to enable them to drive to and from the said north and south alley, and to the rear of their said buildings. That, when the grantors of the defendants conveyed to them the land over which the said east and west alley extended, such conveyances were made subject to the said easement in favor of said plaintiffs, their grantors and predecessors, and subject to their right to the use of the said east and west alley. There were also findings upon other matters, reference to which is here not necessary.

2. It is contended by appellants that the findings of the court are not supported by the evidence; that it was incumbent upon the plaintiffs to show either that they or their predecessors had used the east and west alley continuously, adversely, and uninterruptedly for a period of time greater than twenty years, or that when the north portion of the north and south alley was closed, in 1879, the plaintiffs or their predecessors were given a right of way over the east and west alley by positive grant; and that the evidence does not warrant

a finding of such a fact upon either of these propositions. The evidence is without conflict that the north and south alleyway from Second South to First South sereets was used by plaintiffs and their predecessors continuously, uninterruptedly, openly, adversely, and under claim of right, from 1858 to and including 1879—a period of more than twenty years. From this record there can be no doubt but that plaintiffs and their predecessors had acquired an undoubted right in and to the use of the north and south alley along its entire extent from Second South to First South at the time when the north portion thereof was closed by the predecessors of the defendants, in 1879. If, then, the predecessors of the defendants, in consideration of the closing of said portion of the north and south alley, granted to plaintiffs and to their predecessors a right of way over the east and west alley in lieu thereof, which was accepted by the plaintiffs and their predecessors, the defendants will not now be allowed to close the new or substituted alley without first restoring the old one; and the fact that such grant was oral matters not, if on the faith of it rights have been acquired or relinquished and acted upon. (*Wright et al. v. Willis* [Ky.], 63 S. W. 991; *Hamilton v. White,* 5 N. Y. 9; *Smith v. Barnes,* 101 Mass. 275; *Beinlein v. Johns,* 102 Ky. 570, 44 S. W. 128; *Robinson v. Thraillkill,* 110 Ind. 117, 10 N. E. 647.) And where the owner of a right of way, whether acquired by prescription or otherwise, consents to the closing of the said right of way in consideration of substituting and granting to him a new one, the right to the use of such new way at once attaches, and he is not required to use the new way for a period of time to give him title by prescription. Indeed, these propositions of law are not seriously controverted by appellants, but they assert that the evidence shows that only some of the plaintiffs and their predecessors objected to the closing of the portion of the north and south alley, and that the oral grant was given only to those objecting in person or by their agents. We think the evidence is sufficient to warrant the finding and conclusion that when the portion of the north and south alley was closed, and the east and west alley was

substituted therefor, it was for the use and benefit of all who had acquired and owned a right in and to the north and south alleyway, including the portion closed, and who acquiesced in such change, and used such substituted way in lieu of the one closed. Moreover, we think there is evidence showing that plaintiffs and their predecessors from 1879 to 1902 openly, notoriously, uninterruptedly, adversely, and under claim of right used the east and west alley a period more than twenty years. The finding of the court that the interruptions, so called, of 1889 and 1893, were for purposes of erecting buildings and for making repairs, and were in recognition of the rights of plaintiffs, is supported by the evidence.

Our conclusion, therefore, is that the judgment of the court below should be, and it is, affirmed, with costs.

BARTCH, C. J., and McCARTY, J., concur.