INHABITANTS OF THOMASTON *vs.* INHABITANTS OF GREENBUSH.

Knox.     Opinion December 13, 1909.

*Paupers.   Settlement.   Minors.   Emancipation.   Parent and Child.   Married Women.   Husband and Wife.   Statute, 1893, chapter 269.   Revised Statutes, 1883, chapter 24, section 3 ; 1903, chapter 27, section 1, paragraphs II, VI, 3, 4.*

Minor children have the same pauper settlement as their father under Revised Statutes, chapter 27, section 1, paragraph II, which provides that "legitimate children have the settlement of their father, if he has any in the state."

Emancipated minor children take the pauper settlement which their father had at the time of emancipation and this settlement continues until they gain a new one for themselves.

An emancipated minor child cannot gain a pauper settlement in a town during minority by having his home therein for five successive years, as under Revised Statutes, chapter 27, section 1, paragraph VI, it is only a "person of age" who can acquire such settlement by having his home in a town for the required length of time.

Emancipation of minors by their father is shown by his abandonment of them and his silent assent to their care and custody being given to the mother on divorce obtained by the mother.

Supplies furnished minor paupers after emancipation by their father cannot be regarded as supplies furnished to him.

Under Revised Statutes, chapter 27, section 1, paragraph II, it is only when the father has no pauper settlement in this State that the children follow the settlement of the mother, and if she marries a second time her newly acquired settlement then becomes theirs also.

The statute of 1893, chapter 269 (R. S., chapter 27, sections 3, 4) providing that, when one having a pauper settlement shall live for five years outside the state without receiving supplies, he and those deriving their settlement from him lose their settlement, does not affect the settlement of minors emancipated by their father after deriving a settlement through him.

A wife's pauper settlement derived from her husband continues until divorce or his death, and is not affected by his desertion or abandonment of her.

A husband may abandon or desert his wife but he cannot emancipate her.

*Portland* v. *Auburn,* 96 Maine, 501, distinguished.

On report.    Judgment for plaintiffs.

Action to recover for pauper supplies furnished by the plaintiff town to three minor children of one Alden B. Partridge.    An agreed statement of facts was filed and the case was then reported to the Law Court for determination.    By leave of court, the Attorney General was permitted to appear for the State.

*Joseph E. Moore*, for plaintiffs.

*Charles A. Bailey*, for defendants.

*Warren C. Philbrook*, Attorney General, for the State.

SITTING : WHITEHOUSE, SAVAGE, PEABODY, CORNISH, KING, BIRD, JJ.

CORNISH, J.    Action of assumpsit for pauper supplies furnished three minor children of Alden B. Partridge.    From the agreed statement of facts it appears that Partridge, having a pauper settlement in Greenbush, moved with his wife and children to Thomaston and was living there with his family in 1899, when, not having acquired a pauper settlement in Thomaston, he abandoned his family and went to Massachusetts where he has since resided.    His wife obtained a divorce from him on March 20, 1901, and the care and custody of all the children including the three involved here were decreed to her and they have ever since remained in her custody and control.    Shortly after this, Partridge married again in Massachusetts and has resided and kept house there with his new family ever since.    His divorced wife was also married on May 18, 1901 to one George A. Stone whose pauper settlement was then and continued to be in Friendship until his death November 11, 1905.    The town of Thomaston provided pauper supplies for Mrs. Partridge and the children, beginning soon after the father left them in 1899 and continuing to the date of this suit.    Friendship paid for those furnished the mother, after she became Mrs. Stone, and Greenbush for those furnished the children up to March 21, 1906, when they declined to pay longer, claiming that they were released by the provisions of R. S., ch. 27, secs. 3 and 4, and that the State should reimburse Thomaston after that date.    The State did reimburse Thomaston until the fall of 1908, when it refused to make further

payment, claiming that the desertion of his family by Partridge, the divorce proceedings and the decree concerning custody of the children had emancipated them, so that they were and still are chargeable to Greenbush, the statute referred to being inapplicable.

This state of facts calls for a construction of so much of R. S., ch. 27, sects. 3 and 4 as was added by chap. 269 of the Public Laws of 1893, viz: "Whenever a person having a pauper settlement in any town in this state shall hereafter live for five consecutive years beyond the limits of this state, without receiving pauper supplies from any source within this state, he and those who derive their settlement from him lose their settlement in such town."

Let us consider the situation step by step without regard to this statute and ascertain the legal status of the minors in question.

1.   In 1899 when Partridge abandoned his family, his pauper settlement was in Greenbush, and these minor children had the same settlement under ch. 27, sec. 1, par. 1, which provides that "legitimate children have the settlement of their father if he has any in the state."

2.   The legal effect of the father's conduct was an emancipation of the children in 1899.   The general scope of that term has been variously defined by this court as "the destruction of the parental and filial relations," *Sanford* v. *Lebanon*, 31 Maine, 124; "the voluntary acts of the parent in surrendering the rights and renouncing the duties of his position, or, in some way conducting in relation thereto in a manner which is inconsistent with any further performance of them," *Monroe* v. *Jackson*, 55 Maine, 59; "An absolute and entire surrender, on the part of the parent, of all right to the care and custody of the child, as well as to its earnings, with a renunciation of all duties arising from such a position.   It leaves the child, so far as the parent is concerned, free to act upon its own responsibility and in accordance with its own will and pleasure, with the same independence as though it were twenty-one years of age.   Indeed the best test which can be applied is the separation and resulting freedom from parental and filial ties and duties, which the law ordinarily bestows at the age of majority." *Lowell* v. *Newport*, 66 Maine, 78.

The application of these legal rules to the admitted facts of this case leaves no room for doubt that these minors were emancipated when the father abandoned them in 1899. The tie that had previously bound parent and children together, so far as pauper settlement was concerned, was then absolutely and irretrievably severed. After that time they were as completely separated as if by a written instrument he had, as it is colloquially called, "given them their time," or they had on that day become twenty-one years of age. If there were need of proof of his intention additional to that shown by his desertion it is to be found in his silent assent to their care and custody being given to the mother when she obtained her divorce in 1901. The proof of emancipation is ample. *Carthage v. Canton*, 97 Maine, 473.

3. Being emancipated these minors took at the time of emancipation the pauper settlement which their father then had, and that was in the town of Greenbush, and this settlement continues until they gain a new one for themselves. *Lowell* v. *Stetson*, 66 Maine, 78; *Orneville* v. *Glenburn*, 70 Maine, 353. Supplies furnished them after emancipation could not even constructively be held to be regarded as supplies furnished the father. *Liberty* v. *Palermo*, 79 Maine, 473.

4. Nor can they gain a new settlement during minority, because an emancipated minor cannot acquire a pauper settlement in a town by having his home therein for five successive years. It is only a "person of age" who can acquire such settlement by having his home in a town for the required length of time. R. S., ch. 27, sec. 1, par. 6; *Exeter* v. *Stetson*, 89 Maine, 531.

5. The marriage of the mother in 1901 to Stone whose settlement was in Friendship, transferred her settlement to that town but had no effect upon the settlement of the children. It is only when the father has no settlement in this State, that the children follow the settlement of the mother, and if she marries a second time her newly acquired settlement then becomes theirs also. R. S., ch. 27, sec. 1, par. 2; *St. George* v. *Rockland*, 89 Maine, 43; *Winslow* v. *Pittsfield*, 95 Maine, 53.

Independent therefore of the statute of 1893, P. L., ch. 269, there can be no doubt that these emancipated minors belonged to Greenbush when the supplies in question were furnished.

6.   What effect then does this statute have upon the situation in this case?   None whatever.   It does not change the status of these minors in the slightest degree.   From a cursory reading of the words "he and those who derive their settlement from him lose their settlement in such town," it might be assumed that this covers all who in the past have derived their settlement from him.   But further consideration shows that this is not the true construction.   It means that those who, at the time he loses his settlement, namely, at the end of five years, are so connected with him as to then have a derivative settlement from him, lose theirs also.   The tie of settlement still existing between father and unemancipated minors, his loss is their loss.   But when that tie has been severed before the five years expire, then the loss is his alone, because the emancipated children are pursuing an independent course and the expiration of the five years cannot revive the relations between parent and child nor reunite the tie once broken.   The statute was not designed to disrupt already acquired settlements in this way.   Its purpose is apparent.   Prior to its enactment, absence from the State interrupted but did not destroy a settlement once gained here.   "Settlements acquired under existing laws remain until new ones are acquired. Former settlements are defeated by the acquisition of new ones." R. S., 1883, ch. 24, sec. 3.   No residence in another State, however long, destroyed an existing settlement in this State and whenever such person returned to Maine the old settlement awaited him. This sometimes caused hardship as it was difficult to trace the early movements of these parties after the lapse of many years.   To remedy that difficulty, this statute was passed and the five years' absence, under the conditions named, now extinguishes the settlement of the party and of those still bound to him at the end of that time.   It means that and nothing more.   The statute does not speak until the end of five years and when it does speak it has no retroactive force to bring a loss of settlement to those who at

one time derived their settlement from such party but do so no longer.

To illustrate the application and the non-application of the statute. Suppose Partridge had moved to Massachusetts with his family, and at the end of five years his family embraced several children still minors and still unemancipated. The statute applies and was designed to apply to such a case, and the children as well as the father would have lost their settlement in Maine.

On the other hand, suppose that upon leaving his family in Maine in 1899 Partridge had entered into a written contract with his oldest son giving him his time until of age. That constituted emancipation and when emancipated the father's settlement and therefore the son's was in Greenbush. Can there be any doubt that the loss of the father's settlement five years later because of residence in Massachusetts would have no effect upon the son. Or suppose that another son attained his majority before the father had lived five years in Massachusetts. Can it be questioned that the son would take the settlement of his father at that time, which was still in Greenbush, and retain it until he gained another for himself and that the father's loss at the end of the five years could not relate back so as to cover the son?

This court has had occasion only once to construe this statute and that was in *Portland* v. *Auburn*, 96 Maine, 501, cited by the defendant, but that is clearly to be distinguished.

In that case it was held that a wife abandoned by her husband and continuing to live in this State, loses her settlement here in case her husband loses his by reason of five years' residence elsewhere. There is a wide difference between a deserted wife and emancipated children. A man may desert or abandon his wife but he cannot emancipate her. Until divorce or death his settlement is hers, and his loss of settlement is hers, because at the time of the loss she still derives her settlement from him. The settlement tie is not severed and therefore the statute applies to both.

This decision is in full accord with the rule of construction which we adopt. The logical conclusion therefore is that the paupers for

whom the supplies were furnished had their legal settlement in the defendant town and the entry must be, in accordance with the agreement.

*Judgment for plaintiff for $18.28 with interest from the date of the writ, February 23, 1909.*