OLD COLONY STREET RAILWAY COMPANY *vs.* HIRAM W. PHILLIPS.

Norfolk.    January 19, 1910. — January 3, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Easement. Way,* Private. *Deed. Flats. Land Court.*

Discussion by HAMMOND, J., of the rights under the colonial ordinance of 1647 of the public and of the owner of flats between high and low water mark adjacent to an arm of the sea.

It is to be assumed that the phrase "together with a privilege or passage way from said Creek into Town River," in a deed made in 1834 conveying a tract

of land bounded on the south by a highway and on the north by the centre of a creek lying just below high water mark in flats which extended a long distance to Town River, an arm of the sea, was intended to confer upon the grantee a right which otherwise he would not have had.

The owner of a tract of land, bounded on the south by a highway and on the north by an arm of the sea called Town River, and containing within its area upland by the highway, and flats between the upland and low water mark of the arm of the sea, which a "Creek," so called, which was dry at low tide, crossed from east to west just below high water mark, in 1834 conveyed to a shipwright a portion of the tract, bounded on the south by the highway and on the east and north by a line described in the deed as follows: "Thence northerly . . . to a stake in the centre of a creek. Thence easterly along the centre of said Creek. . . ." The deed after the description read as follows: "Together with a privilege or passage way from said Creek into Town River." Access to Town River from the land so conveyed to him, upon which he built a shipyard and plied his trade, was necessary to the shipwright in his business. In 1907, one who had become the owner of the remaining flats petitioned in the Land Court to have his title registered. The judge of the Land Court, subject to an exception by the petitioner, ruled that the "passage way" named in the deeds "was intended to be a way by water from the creek out to the river." *Held,* that the language of the deed to the shipwright granted a right of passage over the flats, whether bare or covered with water, at any and all times and by any reasonable method of travel, which was an easement appurtenant to the land conveyed by the deed.

A phrase in a deed, "together with a privilege or passage way [over certain flats lying between high and low water] from said creek into" an arm of the sea, is not void for indefiniteness if the uses intended by the parties can be adjudged by the aid of the circumstances, although the limits or location of the way have not been determined by the parties by a use or otherwise, because under such circumstances the location must be governed by what is reasonable, which may be judicially determined without adding to the grant.

The owner of a tract of land, bounded on the south by a highway and on the north by an arm of the sea called Town River, and containing within its area upland by the highway, and flats between the upland and low water mark of the arm of the sea, which a "Creek," so called, which was dry at low tide, crossed from east to west just below high water mark, in 1834 conveyed to a shipwright a portion of the tract, bounded on the south by the highway and on the east and north by a line described in the deed as follows: "Thence northerly . . . to a stake in the centre of a creek. Thence easterly along the centre of said Creek. . . ." The deed after the description read as follows: "Together with a privilege or passage way from said Creek into Town River." Access to Town River from the land so conveyed to him, upon which he built a shipyard and plied his trade, was necessary to the shipwright in his business. In 1888 the heirs of the shipwright, by a deed containing the same description and language, conveyed the parcel to a diver, who used it in connection with his business, to the conduct of which access to the arm of the sea over the flats north of the creek was necessary. The creek dried up. In 1907 one who had become the owner of the remaining flats petitioned in the Land Court to have his title registered. The judge of the Land Court, subject to an exception by the petitioner, ordered a decree that the title to the petitioner's flats be registered "subject to a right in favor of" the diver to a way by water from the creek out to the river. *Held,* that the existence of the easement was not affected by the drying up of the

creek, which was referred to merely as a boundary, nor by the fact that the land was no longer used as a shipyard, since the easement was not confined to such a use.

In the absence of any controlling reason to the contrary, a right of way, granted in the following phrase after the description in a deed, "together with a privilege or passage way [over certain flats lying between high and low water] from said creek [just below high water] into" an arm of the sea, must be by the straightest and most direct way, and, whether it be by land or sea, it must be by or over the same land and within the same lines.

A judge of the Land Court, before whom was heard a petition for the registration of the title to certain flats, at the hearing of which the petitioner contended that the language of a certain grant of a right of passage over the flats gave only a right of passage on foot at low tide, and that a passageway by water could not be the subject of private grant, ruled that the passageway "was intended to be a way by water," and ordered a decree that the title be registered "subject to a right . . . as recited in" the deed. The petitioner excepted "because the decree is indefinite as to the limits of and uses of the said right of way." This court, having determined that the right of passage over the flats granted by the deed was at any and all times by any reasonable method of travel and whether the flats were bare or were covered by water, *held*, that the order for a decree was not intended to state in detail the full terms of the final decree as it should thereafter be drawn, nor was the ruling that there was a way by water to be regarded as a statement of the whole nature of the easement, but merely as a ruling upon the feature of it which was in dispute, leaving the details to the future action of the court; and that, thus interpreted, the order was valid.

PETITION, filed in the Land Court on February 4, 1907, for the registration of the title to certain flats at Quincy Point, so called, in Quincy, represented as within the lines W X Z Y on a plan annexed to the bill of exceptions, a copy of which is printed on the opposite page.

The case was heard in the Land Court by *Davis*, J. It appeared that in the year 1834 one Jenkins was the owner of certain upland and flats shown on the plan. The judge found that the easterly boundary of the land and flats owned by Jenkins was the line marked " Vinal-Jenkins Line," that is, the line CD, and that Jenkins, so far as material to this case, owned all the land and flats west of it, so far as represented on the plan.

Town River, as shown on the plan, is an arm of the sea. The plan shows the line of extreme low water, the line of mean low water, and the line of high water. Between the low water lines and the high water line are flats, which are entirely bare at low water and are covered by the sea at high water. There is a very small channel or stream which runs from the extreme southwest corner of the cove marking the line of what was for-

merly a small creek in a general easterly direction to about the middle of the cove, and thence running out northerly to Town

River.   This small channel also is probably entirely dry at extreme low water.   At all events it does not constitute a channel sufficient to form a limit to the extent of private ownership in the flats.

In the year 1834 Jenkins conveyed to one Jones by a warranty deed the tract of land shown on the plan as bounded

southerly by Washington Street, westerly by the line AB, northerly by the line AP or a projection thereof, and easterly by the Vinal-Jenkins line, so called, the exact location whereof is in dispute. The easterly and northerly bounds read as follows: " Thence Northerly. twenty-six Rods to a Stake in the Centre of a creek. Thence Easterly along the Centre of said Creek." Following the description in the deed was the phrase, " together with a privilege or passage way from said Creek into Town River so called."

In 1888 the heirs of Jones conveyed the same land to the respondent Phillips by deeds, which after the description contained the following clause: " containing about one and one-half (1½) acres, more or less, together with a privilege or passageway from said creek into Town River, so called. Being the same premises described in " the deed from Jenkins to Jones.

Jones was a shipbuilder, and access to the river from this tract was necessary to the business of shipbuilding thereon.

Against the petitioner's objection the judge ruled as follows: " It seems clear to me, however, and I rule that the passageway [referred to in the deed from Jenkins to Jones] was intended to be a way by water from the creek out to the river." The judge therefore ordered a decree that the title to the petitioner's flats be registered " subject to a right in favor of the Phillips estate as recited in the deed from Jenkins to Jones." The petitioner alleged exceptions.

Other facts are stated in the opinion.

The case was argued at the bar in January, 1910, before *Knowlton*, C. J., *Hammond, Braley, Sheldon*, & *Rugg*, JJ., and afterwards was submitted on briefs to all the justices.

*W. A. Rollins*, for the petitioner.

*W. S. Pinkham*, for the respondent.

HAMMOND, J. This is a petition for the registration of title to certain flats in Quincy ; and the case is before us upon exceptions taken by the petitioner to the ruling of the Land Court that the passageway named in the deed from Jenkins to Jones " was intended to be a way by water from the creek out to the river," and to the order that " the title to petitioner's flats be registered ' subject to a right in favor of the Phillips estate as recited in ' " that deed. The flats are shown upon a plan annexed to the bill

of exceptions, and the bill recites that reference may be made to it as well as to all the other papers in the case including a copy of the written decision of the Land Court.   This last paper is a typewritten document of seventeen pages, setting forth in considerable detail the contentions of the parties at the hearing as to the various questions of law and fact involved, as well as the decision of the court thereon.   The so called grounds of the exceptions to the ruling and order are first, that " the words in said deed from Jenkins to Jones did not give a right of way by water from the creek out into the river " ; second, that " the respondent Phillips has no right of way by water over petitioner's flats " ; and third, that " the decree is indefinite as to the limits of and uses of the said right of way."

1.  As to the ruling.   One of the contentions of the petitioner is that the attempted grant was void because in law there is no such thing as a grant of way through tidal water.   But this objection proceeds upon an entire misconception of the right granted.   The phrase which calls for construction follows immediately the description of the land conveyed in fee and reads thus :  " together with a privilege or passage way from said Creek into Town River."

Of the land conveyed by the deed the southern portion was upland bounded on the south by a highway, and the northern portion was flats adjoining the upland and bounded on the north by the centre of a creek.   This creek was dry at low tide and therefore did not mark the limits of riparian ownership of the flats.   Extending from the creek northerly to the low water mark of Town River, in which the tide ebbed and flowed, was a large extent of flats owned by Jenkins at the time of the delivery of his deed to Jones.   By virtue of the colonial ordinance of 1647, Jenkins as such owner was vested with the title in fee, with full power to reclaim the flats by building upon them or inclosing them ; but he held the fee subject to a general right of the public for navigation until his land was built upon or inclosed, and subject also to the restriction that, unless permitted by some public authority, it should not be built upon or inclosed in such manner as to cut off wholly the access of his neighbors to their houses or lands.   *Commonwealth* v. *Alger,* 7 Cush. 53, 78.   *Davidson* v. *Boston & Maine Railroad,* 3 Cush. 91, 105.   *Henry* v. *Newbury-*

*port,* 149 Mass. 582, 586. During a certain portion of every twelve hours these flats were bare, and during the rest of the time they were covered with water of varying depth. Before the deed Jones as one of the public had the right to navigate over these flats; and after the deed, even if there had been no special mention therein of any privilege or passageway, he still would have had this public right, and he would have had the right also of a riparian proprietor that, except by public authority, his access to the river or sea from his land should not be wholly cut off by buildings or inclosures upon the flats. But neither before the deed nor (in the absence of provision therein to the contrary) after the deed, would he have had the right, either as one of the public or as a riparian proprietor, to pass over the flats when bare (except they be reached without trespass and then only for a limited purpose) or in any other way than by water conveyance. See *Weston* v. *Sampson,* 8 Cush. 347. And even the right to navigate was not absolute. So far as it was a public right the owner of the flats could destroy it by buildings and inclosures, and it stood only so far as it was a riparian right. See the note to *Commonwealth* v. *Roxbury,* 9 Gray, 451, on pages 519, 520, and cases there cited. In the deed Jones is described as a " shipwright," and the Land Court has found that he was a shipbuilder and that "access to the river from . . . [the land described in the deed] . . . on which he had his shipyard was necessary in his business."

Under these circumstances what is the fair construction of the phrase " together with a privilege or passage way from said Creek into Town River " ? What did the parties mean? It is to be assumed that they meant something, that the phrase was intended to confer upon the grantee a right which otherwise he would not have had.

There is nothing in the deed expressly limiting the right to any particular time or to any particular method of travel. The parties were thinking of a passageway from the land described in the deed to the low water mark of the river, — a passageway over land which by the operation of natural laws was bare or substantially bare during a considerable part of every twelve hours, and during the rest of the time was covered with water of varying depth, a part of the time capable of being navigated.

If the passage was only by land or if it was only by water, then in either case during a considerable part of every twelve hours it was not available.   The language of the deed is broad and comprehensive and must be held to describe a right of passage over the flats, whether bare or covered with water, at any and all times and by any reasonable method of travel.   The passage may be by walking on the bare flats, by wading when practicable, or by boat when convenient.   The easement is not through public waters as such, but is over land ; and that is so whether or not the land is covered with water and whether or not the public have also another and different right to pass through the water. It is an easement over land in fee owned by the grantor.   It interferes with no right of the public, and we see no reason why it may not be valid in law as between the parties to the deed and their privies in interest.   Suppose the owner of the fee of the bed of a private natural pond should grant a way over a part of the bed, could it be successfully contended that the grantee could not pass over the way in a boat provided always he keep within the lines of his way ?   See *Commercial Wharf* v. *Winsor*, 146 Mass. 559, for a discussion of some principles of the law on the general subject.

It is further urged that the attempted grant is void for indefiniteness.   In support of this it is urged that the deed makes no express mention of the limits of the way, or of its precise location, or of the purposes for which it may be used, and that these deficiencies cannot be supplied by judicial construction.   This contention however is untenable.   By the aid of the circumstances the court can adjudge the uses intended by the parties; and when the limits or location of the way have not been determined by the parties by a use or otherwise (see *Bannon* v. *Angier*, 2 Allen, 128), then the rule is that in those respects the location shall be reasonable and what is reasonable may be judicially determined.   The deed therefore conveyed a valid right, and this right was not a mere license, but was an easement appurtenant to the land conveyed by the deed.

The language of the deed is that the passage is from the creek, and it is suggested by the petitioner that the land conveyed did not include the creek and hence that the easement was not appurtenant to the land conveyed.   But the northerly

line of the land conveyed is the centre of the creek and the passageway must be held to start from the boundary line. The easement must be held to be not only over the remaining flats of the grantor Jenkins, but also appurtenant to the land conveyed by the deed.

It is next urged that even if there ever was a right of way through the water it has been extinguished, first, because the creek, i. e. the dominant tenement, has dried up, and second, because the premises are no longer used as a shipyard. But, as has been just stated, the dominant tenement is not the creek but the land conveyed by the deed; and while the fact that the dominant estate was used as a shipyard has a bearing upon whether a passageway by water was intended, the easement cannot be held to be solely for the use of the land as a shipyard. And in the written opinion of the Land Court it appears that "in 1888 the respondent Phillips purchased the Jones tract [the dominant estate] and has used it ever since in connection with his business as a diver, bringing in vessels and lighters at high water clear up to his upland, and anchoring and wintering them in the cove where at low water they are high and dry. Access to the river over the flats north of the old creek, which marks the northerly limits of his ownership, is necessary to his business." It cannot be said that the easement has been extinguished. Nor does there appear to have been at any time an abandonment of the easement by non-user or otherwise.

But this right of passage must be fairly construed. In the absence of any controlling reason to the contrary, and in this case we see none, the passage must be by the straightest and most direct way. And the way by water cannot be such as a sailboat would take when beating against a head wind. Whether the passage be by land or water it must be over the same land, and within the same lines. Such is the general nature of the right granted by the deed. It is valid in law and still exists as an easement in favor of the land conveyed by the deed over the flats between that and Fore River. The exception to the ruling must be overruled.

2. As to the order for a decree. The order was that there should be a decree that "the title to the petitioner's flats be registered 'subject to a right in favor of the Phillips estate as

recited in the deed from Jenkins to Jones.' "    To this order the petitioner excepted " because the decree is indefinite as to the limits of and uses of the said right of way."    It is to be noted that the order is not a final decree, nor can it be considered as intending to state in detail the full terms of the final decree as it shall thereafter be formally drawn.    To get at its significance it is well to recur to the proceedings in the Land Court which led up to it.

Although the petitioner has argued before us that the attempted grant of the right of way, whether it be by land or water, was void for indefiniteness, it does not seem to have taken in the Land Court that sweeping position so far as respects the way by land.    On the contrary, as appears from the written decision of that court, the petitioner argued " that the way provided . . . was a way on foot and at low tide only; and that a passageway by water cannot be the subject of private grant."    The only thing really in dispute was whether there was a way by water; and this view of the attitude of the petitioner in the Land Court is supported by the grounds of the exceptions to the ruling as they are set forth in the bill of exceptions.

The order for a decree therefore is not to be interpreted as an order that the decree shall be as narrow as the ruling and refer only to the water way.    Under these circumstances the ruling of the court that there was a way by water is to be regarded not as a statement of the whole nature of the easement, but merely as a ruling upon that feature of it which was in dispute.

It was simply an adjudication that by the deed in question a valid easement was created in favor of the land therein conveyed over the flats of the petitioner, and that the easement still exists as thus created.    And except as thus adjudicated it left the details of the decree to the future action of the court. As thus interpreted the order was valid.

It would appear from the end of the last paragraph but one of the written opinion of the Land Court * that it was the purpose of that court to describe in the final decree the general nature of the easement but not the way in which it may be exercised.

---

* The language referred to was as follows: " Just how this way or right can be exercised is not within the jurisdiction of this court, or the limits of this case."

But whether that be so or not, it is manifest that the question whether the final decree as hereafter drawn will be objectionable because too indefinite or for any other reason cannot now be determined.

*Exceptions overruled.*