CHARLES U. COTTING & another, trustees, *vs.* LAWRENCE MURRAY & others.

Suffolk.    January 23, 24, 1911. — May 19, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Way*, Private.

The owner of a large tract of land in 1842 conveyed to one W a lot therefrom with a right of way from it over "a five feet passageway to be laid out by" the grantor to a street near by.  Three months later he conveyed to W other land adjacent to the first lot and bounded on one side by another "passageway not less than five feet wide leading to" the same street, it being stated in the deed that the second parcel was designed as an enlargement of the first, the deed also granting "a free and uninterrupted right of passing and repassing in, upon and over said passageway not less than five feet wide laid out by us . . . in common with us . . . said easements to be enjoyed as appurtenant to the land conveyed . . . both by these presents and by our said former deed."  At the time of the second deed, the passageway mentioned therein was in existence and was twelve feet wide from the street to a point in the middle of the line of W's lot bounding thereon, and it continued through other land of the grantor five feet wide.  Afterwards the grantor made it twelve feet wide to a point beyond W's lot and laid out an extension of it fifteen feet wide at right angles to it from a point just beyond W's lot.  Each arm of the passageway ended in a *cul de sac*.  The fifteen foot arm was rendered inaccessible to teams and carriages by posts at its entrance.  A brick sidewalk four feet wide was built along the side of the original passageway by abutters who afterwards purchased lots from the tract along one side of it.  From 1842 to 1892 W and his successors, with the common consent of the abutters, maintained a post in the way opposite his premises for the purpose of preventing teams and carriages from using the way beyond it.  The way was paved with cobblestones by W and others at first only from the street to the post, and later beyond the post.  From the street to the post the way was used for teams and carriages with the consent of all abutters on the passageway.  In 1892 a successor in title to W removed the post and certain of the abutters sought in equity to restrain him from using the way for teams and vehicles, and to limit him to a five foot passageway.  *Held,* that, because the wording of the

second deed to W did not limit the way to five feet and it was treated by common consent by all parties as twelve feet in width, it must be regarded as of that width; and also that the setting up and maintenance of the post by W and his successors by common consent did not prevent a later successor of W from withdrawing his consent to such limitations of the use of the way or from insisting upon his right to use the entire way in front of his premises and to the street in the same way.

Where an indefinite way has been granted by deed and either at the time of the grant or afterwards it is practically located and determined by common consent of the grantor and the grantee and as thus located is used and acquiesced in by all parties interested for a long term of years, the way so located and determined will be regarded as the way intended to be granted by the deed.

BILL IN EQUITY, begun by a writ of attachment containing a bill of complaint, dated November 16, 1892, and filed in the

Superior Court on December 5, 1892, by the owners of the lot marked "Williams" on the accompanying plan, seeking to enjoin the defendants, owners of other lots abutting on Townsend Place, from interfering with the plaintiffs' use thereof and to have the defendants asked to remove a certain post placed by them in the way, and for damages; also a

CROSS BILL in which some of the defendants, owners of lots numbered 1, 3, 5, 7, 8 and 10 on the plan, sought to enjoin the plaintiffs from using Townsend Place for horses and carriages and to limit them to the use of a way five feet wide.

The case was referred to Charles E. Grinnell, Esquire, as master, who filed a report to which was attached a "sketch map," from which the accompanying plan is made.

From the report it appeared that the land conveyed to Williams on July 12, 1842, as stated in the opinion, was that part of the lot marked " Williams " lying between Boylston Street and the dotted line with the words and figures " July 1842 Line " upon it, and that the lot conveyed to him on October 19, 1842, was the lot between that line and Townsend Place.

All the land included in the heavy lines on the plan belonged to the Townsend heirs at the time of the first conveyance to Williams.

Other facts are stated in the opinion.

Exceptions to the report were overruled by *Wait*, J., and a final decree was entered, as stated in the opinion, granting the prayers of the bill and dismissing the cross bill. The plaintiff in the cross bill, and those of the defendants in the original bill against whom the decree was, appealed.

*J. L. Putnam*, (*R. W. Hill* with him,) for the plaintiffs.

*R. S. Warner*, for the defendants.

MORTON, J.   The plaintiffs are the owners of a lot of land in Boston, bounded northerly on Boylston Street and southerly on a way called Townsend Place. Townsend Place extends easterly and southerly from Carver Street, and forms at its easterly and southerly ends a *cul de sac.*   That part on which the plaintiffs' premises abut is twelve feet wide. From a short distance beyond the plaintiffs' premises to the easterly end it is five feet wide. The southerly portion is fifteen feet wide. This is a bill to restrain the defendants from obstructing the plaintiffs in the use of the way by maintaining a gate or post or any other obstruction therein.   A cross bill was filed by certain of the defendants to restrain the plaintiffs from using said way for teams and carriages and to enjoin them from making any use of said Townsend Place except to the extent of a five foot passageway. The case was sent to a master who found in favor of the plaintiffs in the original bill and against the plaintiffs in the cross bill. Exceptions to the report were filed by certain parties who were defendants to the original bill and plaintiffs in the cross bill. The exceptions were overruled and a decree was entered in favor of the plaintiffs in the original bill with costs against certain defendants, and dismissing it with costs as to other defendants, and dismissing the cross bill with costs. The plaintiffs in the

cross bill and the defendants in the original bill against whom the decree ran appealed. The appellants are owners of lots abutting on the southerly extension of Townsend Place, and henceforth we shall speak of them as the defendants and of the plaintiffs in the original bill as the plaintiffs.

The lots belonging to the plaintiffs and the defendants respectively, as well as Townsend Place itself, originally constituted a part of a tract of land belonging to certain persons called the Townsend heirs. On July 12, 1842, they conveyed to the plaintiffs' predecessor in title, one Williams, a lot bounded on the south by other land of the grantors, " with a free and uninterrupted right of passing and repassing in, upon and over a five feet passageway to be laid out by us to and from Carver Street in common with us, our heirs and assigns, and of draining under the same, subject to payment of a proportionate part of the cost of keeping in repair said passage way and drain." Subsequently, on October 19, 1842, another lot of land was conveyed to the plaintiffs' predecessor in title by the same grantors, which lot of land was described as bounding northerly on the lot previously conveyed and " southerly by a passage way not less than five feet wide leading to Carver Street." The deed then proceeded as follows : " Said parcel of land being designed as an enlargement of the tract of land conveyed to said Williams by our said former deed, with a free and uninterrupted right of passing and repassing in, upon and over said passageway not less than five feet wide laid out by us to and from said Carver Street in common with us our heirs and assigns and of draining under the same, subject to payment of a proportionate part of the expense of keeping in repair said passage way and drain, said easements to be enjoyed as appurtenant to the land conveyed to said Williams both by these presents and by our said former deed." Like conveyances of the two lots easterly of that thus conveyed to the plaintiffs' predecessor in title were made to the two parties to whom the two lots easterly of that originally conveyed to Mr. Williams had been deeded. At the time when these last conveyances were made the passageway in question on which they bounded was laid out twelve feet wide from Carver Street to a point about half way along the southerly line of the plaintiffs' lot and five feet wide for the rest of the distance. Subsequently the passageway was widened by

the grantors to twelve feet to a point beyond the lot conveyed to Mr. Williams, remaining five feet wide for the rest of the distance easterly, and was extended southerly with a width of fifteen feet. This was in 1844 or thereabouts and the way has remained ever since as thus laid out. At the time when the southerly extension of the way was laid out, posts were set across the northerly end of it where it joined the twelve foot way running east and west and have been maintained there ever since. The southerly extension has thus been rendered inaccessible to teams and carriages. A brick sidewalk three or four feet wide was built by abutters along the northerly side of the way from Carver Street to its easterly end, and Mr. Williams caused a post to be set in the passageway a little easterly of the west line of his lot projected southerly, and midway between the edge of the sidewalk and the southerly line of the way. From the time when this post was set until 1892, when the premises occupied by Mr. Williams were altered over for business purposes, a post has been maintained by Mr. Williams and others, by common consent, for the purpose of preventing teams and carriages from using the way beyond the point where it was set. Mr. Williams and others caused the way to be paved with cobblestones from Carver Street to the post, and later beyond that, and since the post was placed there the way has been used at all times from Carver Street to the post for teams and carriages by and with the consent of every owner and occupant of premises abutting on Townsend Place. In 1892 Mr. Williams removed the post. Thereupon another post was put there by one of the plaintiffs in the cross bill, which was also removed. A gate was then erected, which also was removed with another gate that was erected in its place. Then this bill was brought by the plaintiffs in November, 1892.

The plaintiffs contend first that they and the other parties to this litigation have under their respective deeds from the Townsend heirs the right to use the passageway from Carver Street to its easterly end on foot and with teams and vehicles; secondly, if that is not so, then they contend that as owners of the fee of that part of Townsend Place which runs easterly from Carver Street, to which they have acquired title since this suit was begun, they have a right to use it for teams and vehicles in

connection with their adjoining premises fronting on Boylston Street, and to enjoin the defendants from making such use of it. The defendants contend that the plaintiffs have a right of way only five feet wide for foot travel, and they seek to limit the plaintiffs to that and to enjoin them from using the way for teams and vehicles, it appearing that such use has materially interfered with the letting of houses on the southerly extension of Townsend Place for residences or rooms, and has caused a diminution of the rents.

We think that the decree was right and should be affirmed. The lot is described as bounded " southerly by a passage way not less than five feet wide leading to Carver Street." The way is described not as five feet wide and no more, as in the previous conveyances, but as " not less than five feet wide," thus limiting the minimum but not the maximum width. The same language occurs later in the deed. If the grantors had intended to limit the grantees to a passageway five feet wide and no more it is difficult to understand why in view of the apt language of the previous conveyances they did not do so. On the other hand the indefiniteness of the way granted in the deed is accounted for by the fact that although a portion of the way was already indicated on the surface of the earth as twelve feet wide, the grantors had not finished laying out and disposing of the rest of their land, and might well prefer to leave the final width of the way undetermined while guaranteeing that in any event it should not be less than five feet wide. Moreover the right of passing and repassing over and upon the passageway is given to the plaintiffs " in common with us (the grantors) our heirs and assigns." This can mean nothing else, it seems to us, than that the plaintiffs are to have the right of passing and repassing over the way as finally located by the grantors, whatever the width might be. While in a sense no doubt the way in question was intended as a substitute for the way contemplated in the previous conveyances, it is plain, we think, that it was not intended that it should be limited to the same width. Moreover it could not have been intended as a substitute in the case of Mr. Williams, since the five foot way was left open from his premises to Carver Street and no release was required from him as there was in the case of the grantors of the two lots easterly. The

setting out and maintenance of the post cannot be held, we think, to have affected the rights of the parties. It was maintained by common consent on the part of the abutters, and when such consent was withdrawn by one or more of them the parties were left to their rights under their deeds.

We think that the case comes within the principle that where an indefinite way has been granted and is either at the time or afterwards by the common consent of the grantor and grantee practically located and determined, and as thus located is used and acquiesced in by all parties interested for a long term of years, it will be regarded as the way intended to be granted by the deed. *Bannon* v. *Angier*, 2 Allen, 128. The case differs from that of *Stetson* v. *Curtis*, 119 Mass. 266, relied on by the defendants, for the reason that in the present case it is manifest that the whole width of the passageway was intended by the grantors to be used as a way.

Whether the plaintiffs acquired any greater or different rights in regard to their use and the use by others of the passageway by their purchase of the fee of it from what they had before, it is not necessary to consider.

*Decree affirmed with costs.*