LUTHER P. DAVIS *vs.* HOWARD D. SIKES.

Hampden.    December 8, 1925. — February 24, 1926.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Way*, Private: of necessity. *Equity Pleading and Practice*, Answer.

In a suit in equity for an injunction to restrain the defendant from using a way over land of the plaintiff, the defendant filed an answer stating: "And further answering the defendant says that he has a right of way across the land of the plaintiff which right of way has existed for con-

siderably over twenty years and has never been abandoned. That his passing to and fro over the land of the plaintiff is by virtue of and confined to said right of way which exists in the defendant's favor and with which the plaintiff cannot interfere." At a hearing before a master, an issue, whether a way of necessity existed in favor of the defendant, was fully tried without any question of pleading being raised. Upon a report and reservation of the suit for determination by this court, it was *held*, that a contention by the plaintiff, that the pleadings did not permit a defence of a way by necessity, was not open.

A sheriff, after a sale on execution in 1824, set off from several lots of land owned by the judgment debtor two lots bounding on a highway and one interior lot separated from the others by other lots of the debtor. There was no mention in the sheriff's deed of a right of way. *Held*, that by such conveyance a right of way by necessity was created from the interior lot over the intervening lots to the lots bordering on the highway.

After the delivery of the sheriff's deed above described, the two lots bordering on the highway were conveyed to a third person who thereafter in 1827 conveyed to the judgment debtor one of them, which bordered the highway only at a point and which was juxtaposed to a lot on the highway not sold by the sheriff, title to which remained in the judgment debtor. There was no mention of a right of way in any of the deeds. A possible way from the interior lot to the highway existed in part over the two lots on the highway that had been sold by the sheriff. Because of the contour of the land, the most convenient way from the interior lot to the highway was over intervening interior lots not sold by the sheriff, thence in part over the one of those which had been so sold but which the judgment debtor had regained, and in part over the lot on the highway which had never been taken from him. In a suit in equity to enjoin the successor to the title of the interior lot from using the most convenient way, above described, it did not appear that between 1824 and 1827 any way was used by the defendant's predecessor in title over the two lots bordering on the highway which were included in the sheriff's deed. It did appear that continuously for over ninety years after 1827 the defendant's predecessor in title had used that convenient way. *Held*, that

(1) The grantee in the sheriff's deed had a way by necessity from the interior lot over the intervening lots of the plaintiff's predecessor in title to the other lots on the highway which were included in the sheriff's deed;

(2) When the grantee in the sheriff's deed conveyed his two lots on the highway he, by operation of law, reserved a way by necessity over those lots from the interior lot to the highway;

(3) Since, upon one of the lots coming into the ownership of the plaintiff's predecessor in title, who also still owned a second lot on the highway juxtaposed to it, the defendant's predecessor in title used a way partly over such second lot and continued to do so for over ninety years without interruption, it must be presumed that the plaintiff's predecessor had acquiesced in the designation of the way so used as a way by necessity from the interior lot;

(4) In the circumstances, payments from 1878 to 1912 by the defendant's predecessor in title to the plaintiff's predecessor in title of a "crossing fee" over a brook in the way did not as a matter of law result in the way being lost by abandonment or otherwise; and a slight deviation of the way at the brook when the bridge was built in 1880 did not as a matter of law affect the defendant's rights.

BILL IN EQUITY, filed in the Superior Court on June 18, 1923, seeking to enjoin the defendant from using a way over land of the plaintiff, and for damages.

The last paragraph of the defendant's answer was as follows: "And further answering the defendant says that he has a right of way across the land of the plaintiff which right of way has existed for considerably over twenty years and has never been abandoned. That his passing to and fro over the land of the plaintiff is by virtue of and confined to said right of way which exists in the defendant's favor and with which the plaintiff cannot interfere."

In the Superior Court, the suit was referred to a master. Material findings by him are described in the opinion. Material features of a plan annexed to the master's report are given below.

The suit was heard upon the master's report by *Weed*, J., by whose order there were entered an interlocutory decree overruling exceptions by the defendant to the master's report and confirming the report, and an order for a final decree dismissing the bill. The judge reserved and reported the

suit to this court with a stipulation of the parties that if his ruling as set forth in his order was right, a final decree should be entered dismissing the bill; otherwise, such disposition of the case should be made as justice and equity might require.

The case was submitted on briefs.

*R. J. Talbot & M. L. Davis*, for the plaintiff.

*G. F. Leary & G. D. Cummings*, for the defendant.

SANDERSON, J. This is a bill in equity in which the plaintiff asks for an injunction restraining the defendant from passing over the plaintiff's land and for damages. The defendant in his answer denied that he had trespassed, and alleged that he had a right of way across the land of the plaintiff which had existed for more than twenty years and had not been abandoned, and that his passing over this way was by virtue of and confined to this right of way.

A master was appointed who found in substance that the plaintiff since 1912 has owned a farm of about sixty-five acres, partly in Agawam, Massachusetts, and partly in Suffield, Connecticut, located on the westerly side of the road leading from Springfield to Suffield. This land so far as material to the case is shown on the accompanying plan as lots C, D, E, and F. The defendant since 1904 has been the owner of a tract of about forty acres, adjoining the plaintiff's land, which is represented on the plan as lot A. There is on the plaintiff's land a road extending from the Springfield road westerly and northwesterly to the land of the defendant.

In 1815 Joshua Smith, who owned the area shown on the plan as lots A, B, C, D, E, F, and H, conveyed it to Arthur Snow, and in 1824 a deputy sheriff, by virtue of an execution on a judgment recovered by Joshua Smith against Arthur Snow, levied on tracts C, B, and A, and they were set off to Joshua Smith. By warranty deed dated April 5, 1826, Joshua Smith conveyed lots C and B to one Fowler, who, by warranty deed dated April 24, 1827, conveyed lot C to Arthur Snow. After this conveyance Snow owned all the land now owned by the plaintiff, who obtained title thereto by mesne conveyances. By warranty deed dated October 14, 1834, Joshua Smith conveyed lot A to Alfred Sikes, who

died in 1869 seised of this tract, and the defendant acquired title thereto by conveyances from his heirs. A right of way is not mentioned in any of the deeds in the chain of title either of the plaintiff or of the defendant. The contour of the land is such that this road was the most natural and convenient way for reaching the highway from the lots A, E, and F. There were two brooks running through the farm and a ravine, the southerly bank of which, in places eight feet or more in height, was located a little northerly of this road; and in the ravine the land was wild and marshy. Except for the fact that in 1880 a bridge was built over the brook a little southerly of the place where it had formerly been forded, the road since 1824 has been located in substantially the same place, and has been used by the plaintiff and his predecessors in title in going from the Springfield road to lots E and F, and by the defendant and his predecessors in title in going from the Springfield road to lot A.

In 1824, when Smith became the owner of lots A, B, and C, lot A was surrounded by land of third persons and land of Snow. There was no reasonable way for him to go from tract A to tracts B and C except over what is now the plaintiff's land. From the "ash tree by State line," shown on the plan in lot C, he could have reached the Springfield road by making a road at reasonable expense on the northerly side of the southerly boundary line of C. There was then no necessity for him to go over D which was owned by Snow. There is nothing to show that a way over C and B to the Springfield road was built or used during the two years that these lots were owned by Smith or at any other time. It is evident that at this time Smith had a way by necessity from A over F and E to B and it is apparent from the findings and plan that the natural if not the only practicable route over his own land toward the highway was by the old road as far as the ash tree. No way was designated over E and F other than the road shown on the plan which was the way used. When in 1826 Smith conveyed lots B and C to Fowler there was an implied reservation of a right of way by necessity to reach the highway over these lots. The master found that if upon the facts found there was a way by necessity

it existed over the present road from A to the ash tree and thence over C and B to the Springfield road, and that there was no way by necessity over the part of the road which runs from the ash tree over D. With the conveyance of lot C from Fowler to Arthur Snow in 1827, the grantee owned all the land now owned by the plaintiff. After reaching lot B by the road it was apparently not practicable to construct a way across the ravine on B, and upon the facts found the failure of the dominant owner to construct or use a way over lot B cannot be relied on by the plaintiff. Lot C was subject to the right of way of Smith from A. Snow was then the owner of both D and C as one lot and might have designated a way over C rather than D, but he did not do so. The defendant might have insisted on his right to go over C, but he did not. Instead, the owner of A continued to use the way over C and D with the knowledge of Snow and his successors in title for almost one hundred years.

The contention that the defence of a way by necessity is not open under the answer cannot be maintained. The answer gave notice of a claim of justification for the alleged acts of trespass by reason of a right of way. The issue of a right of way by necessity was fully tried and if the plaintiff desired to raise the point he now makes about the form of the answer he should have done so specifically at the trial.

The case was reported upon the agreement of counsel that if the rulings of the trial judge in the order for decree were right a final decree should be entered dismissing the bill; otherwise, such disposition to be made of the case as justice and equity require. It "is familiar law that if one conveys a part of his land in such form as to deprive himself of access to the remainder of it unless he goes across the land sold, he has a way of necessity over the granted portion. This comes by implication from the situation of the parties and from the terms of the grant when applied to the subject matter. The law presumes that one will not sell land to another without an understanding that the grantee shall have a legal right of access to it, if it is in the power of the grantor to give it, and it equally presumes an understanding of the parties that one selling a portion of his land shall have

a legal right of access to the remainder over the part sold if he can reach it in no other way. This presumption prevails over the ordinary covenants of a warranty deed." *New York & New England Railroad* v. *Railroad Commissioners,* 162 Mass. 81, 83. *Charles* v. *Boston Elevated Railway,* 230 Mass. 536. *Orpin* v. *Morrison,* 230 Mass. 529, 533. *Gorton-Pew Fisheries Co.* v. *Tolman,* 210 Mass. 402. Such a way may be created where the dominant estate is set off on execution from the servient estate. *Schmidt* v. *Quinn,* 136 Mass. 575.

The necessity is not limited to absolute physical necessity. It means that the way must be reasonably necessary. *Pettingill* v. *Porter,* 8 Allen, 1. *Nichols* v. *Luce,* 24 Pick. 102. *Gorton-Pew Fisheries Co.* v. *Tolman,* 210 Mass. 402, 410. "If the landowner can at reasonable cost construct a way over his own land, there is no way by necessity." *Adams* v. *Marshall,* 138 Mass. 228, 236. *Carbrey* v. *Willis,* 7 Allen, 364, 369. *Pettingill* v. *Porter, supra. McKenney* v. *McKenney,* 216 Mass. 248. *Orpin* v. *Morrison,* 230 Mass. 529, 531. *Johnson* v. *Knapp,* 146 Mass. 70. The owner of the servient estate has the first right to locate an undefined way, subject to the requirement of reasonable convenience and suitability, and if he fails to do so the owner of the easement is entitled to fix its location. *Russell* v. *Jackson,* 2 Pick. 574. *McKenney* v. *McKenney, supra.* The practical adoption and use, for a long time, of a particular route, under a right of way granted by deed, without fixed and defined limits, if acquiesced in by the grantor, operate to determine the location of the way as effectually as if the same had been described in the deed. *Bannon* v. *Angier,* 2 Allen, 128. *Cotting* v. *Murray,* 209 Mass. 133. In the case of a way by necessity the use of a particular way by the grantor before the conveyance, and by the grantee after, may operate as an assignment or designation of this way as a convenient one which would deprive the grantee of the right to use any other route while this was unobstructed. *Bass* v. *Edwards,* 126 Mass. 445. After the location of an undefined way has been fixed it cannot be changed except by agreement. *Jennison* v. *Walker,* 11 Gray, 423. *Schmidt* v. *Quinn, supra. Kesseler* v. *Bowditch,* 223 Mass. 265. "When a

right of way in a certain locality exists, it may be changed by the verbal agreement of the parties in interest; and when the change is actually made, and a new way is thus adopted by them, it fixes and determines their respective rights." *Smith* v. *Lee*, 14 Gray, 473, 480. A general right of way obtained by grant may be used for such purposes as are reasonably necessary to the full enjoyment of the premises. It is not necessarily limited to such use as was being made of it at the time of the conveyance. *Crosier* v. *Shack*, 213 Mass. 253, 255. *Parsons* v. *New York, New Haven & Hartford Railroad*, 216 Mass. 269, 273. *Barrett* v. *Duchaine*, *ante*, 37, 41. The same principle is applicable to ways by necessity. *Whittier* v. *Winkley*, 62 N. H. 338. *Myers* v. *Dunn*, 49 Conn. 71, 77. There is no finding that the defendant was making an unreasonable use of the way.

Upon the facts found it must be presumed that the road as used for so many years, including the part through D, has been designated as a convenient way between lot A and the main road with the acquiescence of all parties in interest. No other way so far as appears has been designated or used. *Pope* v. *Devereux*, 5 Gray, 409. *Smith* v. *Barnes*, 101 Mass. 275. *Epstein* v. *Dunbar*, 221 Mass. 579. *Byrne* v. *Savoie*, 225 Mass. 338. It follows that the master was in error in concluding that the defendant had no right of way over D, and the decision of the trial court that the defendant had a right created by necessity over C, and, by reason of the presumed designation and acquiescence therein, over D, was right. The way by necessity having been established, it was not lost by the payment by the defendant's predecessor in title of a crossing fee from 1878 to 1912, nor did this amount to an abandonment. The slight deviation of the way at the brook where the bridge was built in 1880 did not affect the defendant's rights. The necessity for a convenient way still exists and no question of a right of way by adverse use can be based upon the facts found by the master. The defendant is not a trespasser in using the roadway shown on the plan in going to and from A. All questions argued have been considered.

*Order for decree dismissing bill affirmed,*
*with costs of this appeal.*