IRA H. LAFLEUR ET UX. *v.* WILLIAM ZELENKO ET AL.

February Term, 1928.

Present:   WATSON, C. J., POWERS, SLACK, MOULTON, and CHASE, JJ.

Opinion filed May 2, 1928.

*Marvelle C. Webber, Ira H. LaFleur* and *Wayne C. Bosworth* for the plaintiffs.

*Jones & Jones* for the defendants.

MOULTON, J.   The plaintiffs own a parcel of land, with camp buildings thereon, situated on the northerly shore of Lake Dunmore, and are entitled, by their deed, to a right of way over land now owned by the defendants.   They seek to enjoin the defendants from obstructing a road which they claim to be their right of way.   The defendants admit the obstruction of the road, but say that it is not the right of way which belongs to the plaintiffs.   There was a hearing before the chancellor who, after hearing the evidence and filing a finding of facts, entered a decree dismissing the bill.   The plaintiffs have appealed.

In the finding of facts the following appears:   In August, 1898, Frederick Kopper and Edward S. Marsh conveyed to Frank C. Meehan, his heirs and assigns, a tract of land bordering on the northerly end of Lake Dunmore, which included the lands now owned by the respective parties to this suit.   There was also conveyed to Meehan the right to construct a road through lands of the grantors from the highway to and along the rear of the parcel described in the deed, which road was laid out and constructed in 1899, easterly from the highway to and along a part of the northerly boundary of the Meehan property, for a distance in all of 43 rods, 11 links.

In 1914 a cottage and an icehouse stood upon the Meehan property, several hundred feet northerly from the lake, and a dance pavilion was in process of construction.   From the easterly end of the road constructed along the northerly boundary of the property in 1899, another road extended in a southerly direction to the cottage and icehouse.   This roadway was never laid out, had no definite boundary, but was marked in places by

travel. Where the road passed over such part of the property as was not wooded, traffic did not follow any particular route, but travelers used such tracks as best suited their convenience.

In 1914 the Meehans sold five lots from the southeast corner of their land. Each lot had a frontage of 100 feet on the lake shore and a depth of 300 feet. One of these lots was sold to A. D. Vittum, his heirs and assigns, on September 17, 1914, and the deed included: "Also a right of way over lands of said grantors to said lot." Two other lots were sold on September 21, 1914, to Allen Calhoun, Sr., his heirs and assigns, and the deed contained the following: "And said grantors convey to said grantees a right of way to each of said lots over the lands of said grantors that adjoin said lots." By the deeds of all the lots a provision was made for a right of way, extending from east to west, along the northern boundaries of the five lots, to be ·20 feet wide, 10 feet on the lots and 10 feet on the Meehan land. This right of way had its western terminus not far from the ice-house. After the conveyance of the lots, until the summer of 1927, the only way of reaching the lots was to travel over the roadway leading to the icehouse, and thence over a roadway, first used in 1915, from the icehouse to the westerly end of the right of way extending along the northerly boundary of the lots. During this period, the owners of the lots, including the plaintiffs, did work on the roadway, principally on that part leading from the icehouse to the lots, by drawing dirt, blowing out stumps, and doing other work which would make it more easily traveled. This part of the roadway is not defined except as it is shown by the travel and work on it.

The plaintiffs acquired title to one of the lots and right of way deeded to Allen Calhoun, Sr., by the Meehans, by deed from Calhoun, dated September 8, 1921. This lot is the most westerly one of the five lots sold by the Meehans. At the time of the purchase there were no buildings on the lot, but since then the plaintiffs have erected a cottage, garage, and icehouse and power room thereon, and have cleared the lot of underbrush and expended a large sum of money in the improvement of the property. The plaintiffs acquired title to the Vittum lot and right of way on May 29, 1926.

At the time the Meehans sold the lots in 1914, it was their intention that the right of way to them should be a continuation of the road laid out in 1899 from the highway along the northern

boundary of their land. This proposed right of way was to extend easterly along the northern boundary to the eastern boundary, then turn south along that boundary until it connected with the eastern end of the right of way which extended along the northerly line of the lots. In the fall of 1914, Meehan cut through the woods for 750 feet along the line of the proposed right of way, but did nothing further as he was engaged in completing the construction of the dance pavilion on his land, and after that was completed he did no more work on the road. The proposed right of way was in 1914, as the chancellor has found, "talked over with the purchasers of the lots."

On September 1, 1925, the Meehans conveyed the property and right of way from the highway to O. H. and A. N. Coolidge. The former died in August, 1926, and the latter, his widow, on December 13, 1926, conveyed the property acquired from the Meehans to the defendants.

During the period of ownership by the Meehans and the Coolidges, no objection was made by them to the owners of the lots passing over the roadway extending southerly from the road built in 1899 to the icehouse, and from the icehouse to the right of way on the northerly line of the lots, and they consented to the same. They made no objection to the owners of the lots working on the roadway. During all the time until the summer of 1927, there was no other way over the Meehan property by which the lots could be conveniently reached.

The chancellor states, however, that while the Meehans and the Coolidges consented to the use of this road by the lot owners, he is unable to find that it was ever agreed between the owners of the Meehan property and the lot owners that the latter should have the road as a permanent right of way to the lots.

The defendants purchased the Meehan property for the purpose of establishing a summer camp for girls thereon. In the spring of 1927, they commenced the erection of appropriate buildings. They intended to use a part of the land over which the road passes as a campus and playground and to erect certain buildings thereon, and they have obstructed the road; and unless they can use the land free from any right of way, the development and use of the property as a girls' camp will be greatly impeded.

In the spring of 1927, the defendants built a road twenty feet wide along the course of that which Meehan intended to

construct in 1914. This is a well-constructed road, and no fault or criticism is expressed by plaintiffs as to the roadbed and general construction thereof, except as to certain curves. It may be slightly more inconvenient than the old roadway, but the chancellor is unable to find that the value of the plaintiffs' property will be lessened thereby, nor will they be otherwise damaged. The chancellor has found that the road so constructed is a reasonable one as to both plaintiffs and defendants and will not unreasonably interfere with the enjoyment of the plaintiffs' property; and that the right of way as claimed by the plaintiffs is unreasonable as to the defendants in that it would divide their property and thereby lessen its value and interfere with its reasonable use.

The first question is whether on the facts as found, the decree for the defendants is erroneous.

Since the deeds from the Meehans to the predecessors in title of the plaintiffs did not locate the right of way, but simply granted the right without limiting or defining it, the grantees were entitled to a convenient, reasonable, and accessible way, having regard to the interest and convenience of the owner of the land as well as their own. *Stevens* v. *MacRae,* 97 Vt. 76, 81, 122 Atl. 892; *Kinney* v. *Hooker,* 65 Vt. 333, 337, 76 Atl. 690, 36 A. S. R. 864, and cases cited; *Atkins* v. *Bordman,* 2 Metc. (Mass.) 457, 466, 37 A. D. 100; *Johnson* v. *Kinnicutt,* 2 Cush. (Mass.) 153, 157; *George* v. *Cox,* 114 Mass. 382, 387, 388; *Old Colony St. Ry. Co.* v. *Phillips,* 207 Mass. 174, 93 N. E. 792; *McKenney* v. *McKenney,* 216 Mass. 248, 251, 103 N. E. 631; *Grafton* v. *Moir,* 130 N. Y. 465, 29 N. E. 974, 976, 27 A. S. R. 533; *Gardner* v. *Webster,* 64 N. H. 529, 15 Atl. 144, 145.

In such case the owner of the servient estate has, in the first instance, the right to designate the location. *McKenney* v. *McKenney, supra; Shedd* v. *American Maize Products Co.,* 60 Ind. App. 146, 108 N. E. 610, 614; *Callan* v. *Hause,* 91 Minn. 270, 97 N. W. 973, 974, 1 Ann. Cas. 680; *Eureka Land Co.* v. *Watts,* 119 Va. 506, 89 S. E. 968, 969; *McMillan* v. *McKee,* 129 Tenn. 39, 164 S. W. 1197, Ann. Cas. 1916A, 145, 146; *Glover* v. *Falls,* 120 Miss. 201, 82 So. 4, 6; *Davis* v. *Sikes,* 254 Mass. 540, 151 N. E. 291, 294, 295; *Ritchey* v. *Welsh,* 149 Ind. 214, 48 N. E. 1031, 1033, 40 L. R. A. 105; *Holmes* v. *Seely,* 19 Wend. (N. Y.) 507, 510.

If he fails to do so, the person entitled to the right of way may select a suitable route, having regard for the interest and convenience of the owner of the servient estate. *McKenney* v. *McKenney, supra; Davis* v. *Sikes, supra; Shedd* v. *American Maize Products Co., supra; Ritchey* v. *Welsh, supra.*

While an undefined right of way granted by deed may be given a definite location by the subsequent agreement of the parties, the authorities hold that in the absence of such agreement, the practical location and use of such way by the grantee under his deed, acquiesced in by the grantor at the time of the grant and for a long time subsequent thereto, operate as an assignment of the right, and are deemed to be that which was intended to be conveyed by the deed, and are the same, in legal effect, as if it had been fully described by the terms of the grant. *Bannon* v. *Angier,* 2 Allen (Mass.) 128, 129; *George* v. *Cox,* 114 Mass. 382, 387, 388; *Cotting* v. *Murray,* 209 Mass. 133, 139, 95 N. E. 212; *American Brass Co.* v. *Serra,* 104 Conn. 139, 132 Atl. 565, 567; *Stevens* v. *Powell,* 152 Md. 604, 137 Atl. 312, 313; *Sullivan Granite Co.* v. *Vuono* (R. I.), 137 Atl. 687; *O'Brien* v. *Murphy,* 189 Mass. 353, 356, 75 N. E. 700; *Winslow* v. *Vallejo,* 148 Cal. 723, 84 Pac. 191, 5 L. R. A. (N. S.) 856, 113 A. S. R. 349, 353, 7 Ann. Cas. 851; *Eureka Land Co.* v. *Watts,* 119 Va. 506, 89 S. E. 968, 969.

This is so, although the grantee is not necessarily entitled to the way which had commonly been used prior to the conveyance. *Gardner* v. *Webster,* 64 N. H. 520, 15 Atl. 144, 145.

In *Stevens* v. *MacRae,* 97 Vt. 76, 122 Atl. 892, while the grant of the right of way was undefined, there was no subsequent agreement as to its location, and the plaintiff made no selection of a particular route for a certain single and definite way before the grantor sold the premises to the defendant. Therefore the establishment of the route was left to be made by decree of the court of chancery.

The grantor, or those claiming under him, cannot thereafter legally obstruct the way, and defend by showing another way or mode of enjoyment in a different line or direction, although it may be equally convenient with the right or privilege originally granted (*Bannon* v. *Angier, supra; Ritchey* v. *Welsh, supra; Ives* v. *Edison,* 124 Mich. 402, 83 N. W. 120, 50 L. R. A. 134, 83 A. S. R. 329; *Callan* v. *Hause,* 91 Minn. 270, 97 N. W. 973, 974, 1 Ann. Cas. 680), because an easement such as

a right of way appurtenant is an incorporeal hereditament (2 Blackstone, Comm. 35), and one holding the title thereto has the same right of property therein as he has in land. *Adams* v. *Hodgkins,* 109 Me. 366, 84 Atl. 530, 42 L. R. A. (N. S.) 741. He is entitled to his specific property and cannot be divested thereof without his consent. *Davis* v. *Sikes, supra; Shedd* v. *American Maize Products Co., supra; Ritchey* v. *Welsh, supra; Eureka Land Co.* v. *Watts,* 119 Va. 506, 89 S. E. 968, 970. If his way is illegally obstructed, he is entitled to injunctive relief. *Manbeck* v. *Jones,* 190 Pa. St. 171, 42 Atl. 536, 537.

The findings of fact clearly indicate that, so far as the plaintiffs and their predecessors in title are concerned, the road leading southerly from the road constructed in 1899 to the icehouse, and the road, constructed and repaired by them, leading from the icehouse to the westerly end of the right of way on the northerly boundary of the lots, have been, by user and acquiescence, located and defined as the right of way intended to be conveyed by the deeds. This being so, the plaintiffs are entitled to it as such.

The defendants urge that the facts that in 1915 Meehan intended to construct another road, and started work upon it, and that his intention was talked over with the lot owners, show that the roadway claimed by the plaintiffs was understood to be only temporary. But whatever this intention may have been at the time, it was clearly abandoned when the dance pavilion was erected during that year, because since that time no further work was done, and the former roadway continued in use by the lot owners, with the full knowledge and acquiescence of the Meehans and the Coolidges, not only as to the user, but as to the repairs and work performed upon it by the lot owners and the construction and work done by them on the road near the icehouse.

The plaintiffs allege that they have brought this suit in behalf of themselves and the other owners of lots. The chancellor has found that such of the other lot owners as testified (whether all of such owners, does not appear), make no complaint because they have been deprived of the road in question nor of the road as furnished them by the defendants. One of them did not understand that the road first existing was to be a permanent right of way. However this may be, it does not affect the situation of the plaintiffs, and the case is to be decided

upon the determination of their rights, and not as to those of the others who are not in any way their privies in title.

The plaintiffs have briefed various exceptions to the findings, and to the failure to find in certain respects as requested, but, in view of the disposition of the case, it is not necessary to consider the questions so raised.

*Decree reversed and cause remanded, with directions that a decree be entered for the plaintiffs in conformity with this opinion, with costs of suit.*