PAMELA CAMPBELL[1] & others[2] *vs.* CARRIE L. NICKERSON & others.[3]

No. 07-P-1420.

Suffolk. May 19, 2008. - October 27, 2008.

Present: CYPHER, BROWN, & FECTEAU, JJ.

*Proprietors of Common Lands. Real Property,* Easement. *Easement.*

In a declaratory judgment action brought in Land Court, the plaintiffs failed to demonstrate that an easement in favor of the defendants for access to otherwise landlocked parcels, created solely by an unrecorded proprietors' vote in the early Eighteenth Century, was not valid against the plaintiffs, who acquired the servient estate in the 1970's without actual knowledge of the vote, given the plaintiffs' failure at trial to challenge the use of the easement, their long-time acquiescence in the existence of the easement, and the circumstances of its use. [24-27]

CIVIL ACTION commenced in the Land Court Department on August 25, 2003.

The case was heard by *Charles W. Trombly, Jr.,* J.

*Wendy H. Sibbison* for the plaintiffs.

*Peter S. Farber* for Carrie L. Nickerson & another.

*Bernard A. Leckie & Maryanne H. Leckie*, pro se, submitted a brief.

*William V. Hovey*, pro se, amicus curiae, submitted a brief.

CYPHER, J. The plaintiffs appeal from a Land Court judgment

---

[1]Also known as Pamela C. Osgood.

[2]Diane C. Gregory, Richard L. Huttinger, Claire E. Knowles, Harold E. Knowles, Jr., Dorothy L. Palin, and Ralph A. Rincones.

[3]Town of Brewster, planning board of Brewster (board), Mark D. Nickerson, Bernard A. Leckie, and Maryanne H. Leckie. The town and board did not participate in briefing this appeal.

As entered in the Land Court, the plaintiffs' complaint originally named a number of other individual defendants. Only the Nickerson and Leckie defendants remain in the case on appeal. See note 6, *infra.*

declaring that their land in Orleans is subject to an easement in favor of the defendants for access to their otherwise landlocked parcels in neighboring Brewster. The easement at issue runs over Eli Rogers Road in Orleans to the properties of the defendants along the road's continuation as Clay Hole Road in Brewster. The Land Court judge determined that the easement was created in the early Eighteenth Century in ancient documents not found in the registry of deeds. This case requires us to consider whether the practice, some three hundred years ago, of recording the conveyance of land in a book of proprietors, rather than with the registry of deeds, should be recognized as valid. We conclude that it is valid and affirm the judgment of the Land Court.

1. *Background.* The plaintiffs filed a complaint in the Land Court on August 25, 2003, seeking a comprehensive adjudication and declaration of the rights of the parties in Eli Rogers Road; and annulment of a special permit granted to the defendant, Carrie L. Nickerson, by the planning board of Brewster, which would permit the construction of one residential structure on her parcel.

Following trial in January, 2006, the judge ruled that (1) the plaintiffs were without standing to challenge the special permit,[4] and (2) the defendants have an easement and a right to use Eli Rogers Road in Orleans to access their property on Clay Hole Road in Brewster.[5,6]

The plaintiffs appealed, challenging the validity of the ease-

---

[4]In challenging the special permit, the plaintiffs alleged that Nickerson had no access over Eli Rogers Road by claim of easement. The plaintiffs also claimed ownership of the fee in that road under G. L. c. 183, § 58. Noting that the board clearly avoided any consideration of the rights in Eli Rogers Road, the judge ruled that the plaintiffs failed to support their claims of aggrievement, that is, harm from increased traffic from construction of the proposed residence, as well as from use of the road by the defendants. He also found no authority permitting the plaintiffs, whose properties are in Orleans, to challenge the zoning by-law of Brewster, and therefore ruled the plaintiffs were without standing to pursue their action under G. L. c. 240, § 14A. The plaintiffs do not challenge these rulings in this appeal.

[5]A sketch of the locus made in the Land Court is reproduced in the Appendix of this case.

[6]The judge noted that prior to trial, settlement discussions between the plaintiffs and most of the individual defendants originally named in the plaintiffs' amended complaint resulted in agreements with all but defendants

ment only on the ground that it was not preserved in conformity with the recording statute, G. L. c. 183, § 4.[7]

2. *The origin of the easement.* The defendants' claim of easement is founded on a conveyance by deed on July 20, 1711, made by John and Tom Sipson, then residents of the town of Harwich.[8] That instrument conveyed shares in a large parcel of land to fourteen grantees, hereafter known as the "proprietors." On January 25, 1713/1714,[9] the proprietors met to divide the land among themselves into seventeen lots, and recorded that action and description of the lots in a proprietors' book. At the same meeting, the proprietors recorded the following action:

> "The proprietors . . . considering it will be convenient to them and their heirs and assigns forever to have and receive . . . privilege of passing through one or another of said lots . . . therefore conclude and vote that notwithstanding said lots are laid out as they are or may be in each respective division that each and every of said proprietors of said lands and their heirs and assigns shall forever have and enjoy free liberty of carting, driving and passing over any of said lots both for egress and regress."[10]

---

Carrie L. and Mark D. Nickerson, and Bernard A. and Maryanne H. Leckie, and the trial proceeded accordingly. The plaintiffs granted eight easements to the other original individual defendants for access over the plaintiffs' lands on Eli Rogers Road.

[7]We acknowledge the submission of a brief by amicus curiae William V. Hovey.

[8]The deed contains a statement by the register, dated July 23, 1711, that the deed was received to be recorded, and was "accordingly entered and compared." However, the deed could not be found in the Barnstable registry of deeds because a fire in 1827 destroyed virtually all of the documents which had been recorded up to that time. See *Makepeace Bros.* v. *Barnstable*, 292 Mass. 518, 520 (1935).

The record on appeal contains a copy of this handwritten deed as well as a copy of a typewritten transcription prepared by the defendants. The Land Court judge noted that the copy of the deed was obtained from the Suffolk Files Collection of the Supreme Judicial Court in the Massachusetts State Archives, and appears in volume 61, Superior Court of Judicature number 8331.

[9]The judge noted that the adoption of a new calendar, changing the start of a new year from March to January, often resulted in the notation of 1713/1714 on documents executed in the interim period. In this case, January 25 was only a few months after November, 1713.

[10]The proprietors' book, entitled "Records of the Proprietors of the [Seventeen]

3. *The Land Court decision.* The principal issue at trial was whether the defendants, having the burden of proof, could prove their claim of an easement by grant, and not by prescription or necessity. The plaintiffs argued that (1) their land was not within the parcel conveyed by the Sipson deed and therefore was free of the defendants' claim of easement, and (2) in any event, the proprietors could not create an easement over their own land.

Following a lengthy and detailed analysis of the evidence presented on whether the parcels of the plaintiffs and the defendants are located within the land described in the Sipson deed, the judge concluded that all the land involved in this case was included in the Sipson deed of 1711.[11]

The plaintiffs further asserted, however, that even if their land was within the Sipson deed, the proprietors held the land in common, and tenants in common already have a right to occupy and use the land and, therefore, cannot create an easement to cross over their own land.

The judge determined that not all the land was divided by the January 25, 1713/1714 vote, and that the rights of "egress and regress" were to apply to the lots not only as then laid out, but to lots "as they . . . may be [laid out] in each respective division." The judge correctly reasoned that the proprietors intended the rights of passing over the lots to apply to future divisions of

Share Purchase of the Lands of the Sipsons," long had been in the possession of the Harwich town clerk, who presented it at trial and testified. See G. L. c. 179, § 4, with an antecedent in St. 1712-1713, c. 9, § 1 (providing that the clerk of the proprietors "shall record all votes . . . in books which he shall keep for that purpose until they are delivered to the town clerk [in accordance with § 15, added by St. 1783, c. 39, § 9]"). See Thayer, Crocker's Notes on Common Forms c. 1, § 9 (9th ed. 2006).

[11]While both parties presented expert testimony, the judge's decision follows the tracing of the boundaries described in the Sipson deed by the defendants' expert surveyor. This process was significantly aided by the boundary line agreement of 1705 between the towns of Harwich and Eastham (Eastham included Orleans until 1797). The judge also stated that he took judicial notice of Land Court records, cf. *Miller* v. *Norton,* 353 Mass. 395, 399 (1967), and cited A History of Harwich, by Josiah Paine (1937), which was admitted in evidence.

The judge appears to have had little difficulty in reaching a conclusion with the aid of these materials. Finally, the plaintiffs' counsel stipulated at trial that the land of all the parties is within the boundaries outlined as within the Sipson deed by the defendants' expert surveyor.

the land, and that those rights were established in a manner comparable to the later "common scheme" doctrine. He concluded that the "votes [of the proprietors] amounted to a grant of easement to all those owning land located within the Sipson [deed], including land of both plaintiffs and defendants."

After reviewing the plaintiffs' considerable evidence, as well as their various arguments and memoranda, the judge concluded that the "plaintiffs' land is subject to the easement of Nickerson and Leckie to gain access to their land in Brewster over Eli Rogers Road in Orleans." The judge further determined that the "easement . . . has not been abandoned, in spite of the fact that the use thereof has been sporadic at best and that its precise location may have moved slightly." The plaintiffs on appeal do not challenge any of the judge's factual findings or the conclusions flowing therefrom.

4. *The plaintiffs' appeal.* The plaintiffs assert that "[n]o easement created solely by an unrecorded proprietors' vote in the early 18th century is valid against a party who acquired the servient estate in the 20th century without actual knowledge of that vote." Further, relying on the provisions of G. L. c. 183, §§ 4 and 15, the plaintiffs assert that the encumbrance on their titles is not valid because the easement was never recorded. These assertions appear as argument made for the first time on appeal.[12] Because the parties have briefed the issue, and the ramifications of this argument have broader significance, we comment on it to a limited degree. See *Royal Indem. Co.* v. *Blakely,* 372 Mass. 86, 88 (1977).

The plaintiffs' assertion that the easement is not valid because it was not recorded is entirely without relevant legal support. It ignores the long and unchallenged history of conveyances made by proprietors. It is significant that the recording statute, G. L. c. 183, § 4, and the provisions concerning the records of proprietors in G. L. c. 179, see note 10, *supra,* have had parallel existence for over three hundred years, each without express

---

[12]There is no indication that this argument was set out in the plaintiffs' amended complaint, was articulated during the trial, or arose at trial as a live issue. It was presented in a posttrial memorandum submitted to the judge in lieu of closing argument, on April 18, 2006, nearly three months after the trial. There is no indication that the judge based his decision on the argument as stated in the posttrial memorandum.

reference to, or exception from, the other. We have not found any instance, nor has any been cited to us, where the conveyancing actions of proprietors have been challenged because they were not carried out within the provisions of the recording statute. Moreover, we think it is significant that c. 179 first appears in 1712-1713, many years after the recording statute, which has an origin in Seventeenth Century colonial laws. Presumed to be aware of the recording statute, the Legislature nevertheless provided a different path for transactions of proprietors.

"It has long been the settled law of this commonwealth, that proprietors in common had authority in early times to alienate their lands by vote, which, if duly recorded on the books of the proprietary, passed the title and constituted competent evidence of the transfer." *Green* v. *Putnam*, 8 Cush. 21, 24-25 (1851), and cases cited. Our courts continue to respect the validity of those acts when they are ascertainable on a proper record. Cf. *Makepeace Bros.* v. *Barnstable*, 292 Mass. 518, 520-523 (1935); *Newburyport Redev. Authy.* v. *Commonwealth*, 9 Mass. App. Ct. 206, 213-214, 216, 229-230 (1980); *Sturdy* v. *Planning Bd. of Hingham*, 32 Mass. App. Ct. 72, 74-75 & n.7 (1992).

There is no merit in the plaintiffs' assertion that the easement was not valid because they acquired their land without knowledge of the vote of the proprietors. The plaintiffs' knowledge of the proprietors' vote is irrelevant in view of the considerable evidence of their knowledge of the existence and use of modern day Eli Rogers Road. The plaintiffs do not dispute that the easement determined by the judge is applicable to the road in its present configuration. While the defendants cited evidence of the existence of Clay Hole Road in 1886 and 1887, we need not be concerned about how or when the path of the road evolved after the proprietors' vote of January 25, 1713/1714, circumstances no doubt lost in antiquity, because the parties have accepted its present path on the ground without objection. We think the present case falls within the following long-standing principle:

"Where a right of way, or other easement, is granted by deed without fixed and defined limits, the practical location and use of such way or easement by the grantee under his deed, acquiesced in by the grantor at the time of the

grant and for a long time subsequent thereto, operate as an assignment of the right, and are deemed to be that which was intended to be conveyed by the deed, and are the same, in legal effect, as if it had been fully described by the terms of the grant."

*Bannon* v. *Angier*, 2 Allen 128, 129 (1861). See *Cotting* v. *Murray*, 209 Mass. 133, 139 (1911). The plaintiffs do not dispute the obvious conclusion that the road has had a very long and undisturbed existence in its present configuration.

Moreover, there is considerable evidence that the plaintiffs had notice that the road was used by the defendants and others over many years. The plaintiffs appear to have obtained their lands in the 1970's. At that time Eli Rogers Road was an unimproved dirt road which had been used by one or more of the original defendants, at least since the 1940's, to access their lands along Clay Hole Road. One of them testified that in the 1960's, in response to a request of the Brewster fire chief, he hired a bulldozer to widen the road and reshape the banks along the entire length of the road, and that he and members of his family have continued to perform maintenance to eliminate potholes.

The plaintiffs introduced in evidence three subdivision plans dated 1970, 1972, and 1973, which show vehicle tracks which represent the "original" path of the road. Superimposed on that path the plans show a forty-foot private way labeled Eli Rogers Road. The deed of plaintiff Campbell, then known as Pamela C. Osgood, is typical in referring to the 1970 plan, and states that the conveyance is made with a "right to pass and repass and to use a right of way as ways are commonly used in the Town of Orleans both now and hereafter, on a certain way being a 40.00 foot private way" as shown on the plan cited.

We think the plaintiffs' failure at trial to challenge the use of these roads, and their long-time acquiescence in the existence of the roads, and circumstances of their use, completely undermine their assertion that the easement was not valid because they acquired their lands without knowledge of the vote of the proprietors.

Finally, the plaintiffs assert that modern day purchasers "can ill afford to bear the risk of ancient unrecorded easements by

grant," and further assert that recognizing such easements would disrupt title examinations.[13] They add that the decision of the Land Court "puts into question between 50 to 100 other parcels of land, covering at least 1,000 acres of land on Cape Cod."

Nothing appears in this case to indicate that the titles of the lands in question have been clouded. There is no indication that the current owners have been subjected to any risks, nor have they indicated any insecurity in their titles. The plaintiffs offer no evidence that other land titles in Cape Cod are insecure. Accordingly, we reject the request of the plaintiffs for a reversal of the Land Court judgment. Such a request for changes in long-settled law is more properly addressed to the Legislature.[14]

*Judgment affirmed.*

---

[13]Because of the loss of records of the Barnstable registry of deeds by fire, see note 8, *supra*, it could not have been determined in this case whether there were other transactions recorded following the Sipson deed which would have been relevant. In any event, the Land Court judge's determination that the defendants have an easement to use Eli Rogers Road hardly can be said to be "disruptive" in view of the considerable evidence of the plaintiffs' knowledge of the actual use of the road, and the documentary evidence available to them in the acquisition of their lands.

[14]The defendants' request for attorney's fees is denied.